UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIANNA L. D.[1],

                                                                  Plaintiff,        19-CV-1123-FPG
     v.                                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                             Defendant.
_____

## INTRODUCTION

On September 11, 2015, Plaintiff filed an application for supplemental security income ("SSI") benefits alleging disability beginning on September 4, 2015. Tr.[2] at 181-86. After the application was initially denied, Plaintiff timely requested a hearing. Tr. 88. On March 27, 2018, she appeared with her attorney, Christopher Atkinson, Esq., and testified before Administrative Law Judge Lisa B. Martin ("the ALJ"). Tr. 35-65. A Vocational Expert ("VE"), Susanna Roche, also testified at the hearing. Tr. 65-71. The ALJ issued an unfavorable decision on September 25, 2018. Tr. 12-23. Plaintiff then requested review by the Appeals Council, which the Council denied on July 3, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Subsequently, Plaintiff brought this action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her application for SSI.[3] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 10, 12. For the reasons set forth below, Plaintiff's motion for judgment

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 6.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

1

on the pleadings is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I.     District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments,

the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.20(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.   The ALJ's Decision

At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 11, 2015. Tr. 14. At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: lumbar spine disorder,

asthma, depression, anxiety, and learning disorder. *Id*. She also found that Plaintiff's history of abnormal pain/cysts was a non-severe impairment. Tr. 15. At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 15-17. The ALJ proceeded to determine that Plaintiff retained the RFC to perform a full range of medium work, except that she needed to change positions as often as hourly for one to two minutes, and was limited to detailed, but not complex work tasks not involving a fast assembly quota pace. Tr. 17. The ALJ also determined that Plaintiff was precluded from climbing all ladders, ropes, or scaffolds, and from being exposed to dangerous work hazards, concentrated pulmonary irritants, extreme heat, humidity, and cold conditions. Lastly, the ALJ opined that Plaintiff was limited to occasional, required work interactions with co-workers, supervisors, and the public, and was allowed for up to three percent off-task behavior during the workday. *Id*.

At Step Four of the sequential analysis, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 21. The ALJ then proceeded to Step Five, where she determined that there were jobs in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 22. Specifically, the ALJ found that Plaintiff could work as a dining room attendant and counter supply worker. *Id.*

## II.     Analysis

Plaintiff argues that the RFC determination was not supported by substantial evidence because the ALJ inappropriately evaluated medical opinions contained in the record, and by doing so, created an evidentiary gap in the record that resulted in the ALJ basing Plaintiff's RFC on her lay opinion. ECF No. 10-1 at 10-19. The Court disagrees with Plaintiff for the following reasons.

Generally, the regulations provide that it is the ALJ, and not a claimant's medical providers, who are tasked with making an RFC determination based on the review of the entire record. *See*

20 C.F.R. § 416.927 (d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . , your [RFC] . . . , or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."). The ALJ here relied on several opinions to assess Plaintiff's RFC, two of which Plaintiff is particularly concerned about. Specifically, the ALJ relied on the opinion of consultative examiner Dr. Zali, to whom she afforded significant weight because Dr. Zali's finding that Plaintiff was mildly limited in her ability to maintain attention and concentration was consistent with Dr. Zali's examination of Plaintiff and with the record as a whole. Tr. 21. Plaintiff argues that the ALJ inappropriately relied on Dr. Zali's opinion to craft Plaintiff's mental RFC because Dr. Zali, a one-time consultative examiner, failed to consider Plaintiff's attendance of special education classes in high school, prior classification of learning disability, and a full-scale IQ score of 67 reference to which was contained in the record. ECF No. 10-1 at 15-19. This argument is without merit for several reasons.

First, Plaintiff disregards the well-established practice in this Circuit where courts have repeatedly held that an ALJ may rely on the opinion of a consultative examiner to determine claimant's RFC. *See, e.g.*, *Trepanier v. Comm'r of Soc Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (summary order) (ALJ's RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence." (internal citation omitted)). Plaintiff argues that had Dr. Zali considered Plaintiff's prior IQ score, classification of learning disabled, as well as her attendance of special education classes, the ALJ would have determined that Plaintiff's intellectual functioning was not only below average, but

was in the borderline range.  ECF No. 10-1 at 17-18.  However, Plaintiff ignores the fact that even though Dr. Zali indicated in her psychiatric assessment that Plaintiff received a high school diploma and attended regular education classes, it was Plaintiff who provided this background information to Dr. Zali during the evaluation.[4]  Tr. 427.  Even without the information about Plaintiff's attendance of special education classes, Dr. Zali conducted a thorough examination of Plaintiff and determined that her intellectual functioning was below average.  Tr. 429.  Additionally, so long as the opinion evidence of a medical expert is consistent with the rest of the evidence, the ALJ is allowed to rely on it when assessing a claimant's RFC.  *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

     Here, the ALJ properly relied on Dr. Zali's opinion about Plaintiff's mental limitations because her findings were consistent with the record.  Specifically, the findings that Plaintiff had no limitations in all but one domain were consistent with treatment notes of Plaintiff's providers, who reported Plaintiff's largely normal mental health examinations.  Even though they had diagnosed Plaintiff with moderate depression and mild anxiety, none of Plaintiff's treating sources assessed Plaintiff with more severe limitations than those identified by Dr. Zali.  In fact, Plaintiff's examinations revealed that she was generally alert and motivated, had appropriate, organized and normal thought process and cognitive functions, cooperative and conscientious attention and concentration, adequate judgment and intellectual ability, and no memory problems.  Tr. 436-553, 745, 747-48, 832-33, 837-38, 856-57, 863-64, 871.

---

[4] Notably, Plaintiff also did not allege having any cognitive problems in her disability application and, instead, indicated that she had completed the eleventh grade and did not attend special education classes.  Tr. 200.

Plaintiff's argument also fails because it has been well-established that the ALJ's determination does not have to mirror any particular opinion in the record, *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision"), and, as such, the ALJ is generally free to determine a claimant's RFC based on her review of the entire record. *See* 20 C.F.R. § 416.945. It is also the ALJ, and not a claimant's treating source, who is tasked with resolving the conflicts in the record and making the ultimate employability determination. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (it is "within the province of the ALJ to resolve" conflicting findings and determine the scope of Plaintiff's RFC). Here, the ALJ kept the record open after the hearing to secure Plaintiff's education records, upon review and consideration of which she acknowledged Plaintiff's history of special education classes, low IQ scores, as well as her classification of being learning disabled in her decision, and determined Plaintiff's learning disorder to be one of Plaintiff's several severe impairments at Step Two of the sequential analysis. Tr. 14-16. Moreover, because of the ALJ's thorough review of the record, the ultimate RFC determination as to Plaintiff's mental limitations was more restrictive than the one opined to by Dr. Zali, who found Plaintiff to be mildly limited in only one domain: maintaining attention and concentration. *See Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." (internal quotation marks and citations omitted)).

Plaintiff's argument that her intellectual functioning was in the borderline range based on the results of her one-time IQ score assessed years prior to her filing for disability is nothing more than speculation because the record is void not only of a diagnosis, but a reference by any Plaintiff's treating sources or by Plaintiff herself that would suggest that her intellectual

7

functioning was inadequate. By raising the argument about her intellectual functioning, Plaintiff is trying to cast doubt on the ALJ's proper development of the record. However, contrary to Plaintiff's assertions, this argument does not trigger the ALJ's duty to develop the record pertaining to Plaintiff's intellectual functioning because it has been well-established that such duty arises where there are obvious "gaps in the record," or "when the record serves as an inadequate basis on which to render a decision." *Dunne v. Comm'r of Soc. Sec.*, 349 F. Supp. 3d 250, 258 (W.D.N.Y. 2018). Where, as here, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011).

As previously indicated, while noting her diagnosis of learning disabled, Plaintiff's treating physician and mental health provider have found Plaintiff to have normal cognitive functioning and appropriate thought process during their treatment. Tr. 465, 552, 856-57. Consultative examiner Dr. Zali's opined that Plaintiff's intellectual functioning was only below average, and that her memory and thought process were intact, coherent, and goal oriented. Tr. 428-29. Plaintiff did not allege having any issues with her cognitive functioning neither on her application for disability, nor did she report having them to her treatment providers. Tr. 199, 465. Therefore, because the record does not contain any evidence of Plaintiff having cognitive limitations, the ALJ appropriately considered her learning disability diagnosis, IQ, working memory, comprehension, and processing speed scores, as well as Plaintiff's ability to read newspaper headlines, write short notes, complete her disability application paperwork, care for two children with little help from her family members, and other daily activities when she formulated Plaintiff's RFC. *See, e.g., Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 110 (2d Cir. 2020) ("because [plaintiff] failed to

8

adduce any medical evidence inconsistent with the ALJ's determinations, the ALJ was not faced with 'any clear gaps in the administrative record' that gave rise to an affirmative obligation to seek a medical opinion" (internal citations omitted)); *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) ("The ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (internal citations omitted)); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (remand is "not always required when an ALJ fails in his duty to [develop the record], . . . where . . . [it] contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity").

The Court is also not persuaded by Plaintiff's argument that the ALJ inappropriately assigned little weight to the opinion of her physical therapist Matthew Kulpit, D.P.T. ("Mr. Kulpit"), who opined that Plaintiff was limited in her ability to sit, stand, or walk for more than two hours per day. Tr. 19, 893.  First, the ALJ was allowed to assign limited weight to this opinion because Mr. Kulpit was not an acceptable medical source for purposes of the regulations. *See* 20 C.F.R. § 416.913; Social Security Ruling (SSR) 06–03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).  Although physical therapists are not acceptable medical sources, their opinions may constitute substantial evidence where the opinions are well documented and supported by the medical evidence.  SSR 06-03p 2006 WL 2329939, at *6.  "In considering the opinion of a physical therapist, the ALJ can utilize the same factors used to assess medically acceptable opinions. . . ," *see Acevedo v. Colvin*, 20 F. Supp. 3d 377, 389 (W.D.N.Y. 2014) (internal citations omitted), and has the discretion in determining the appropriate weight given to the other source's opinion. *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir.1995).  "[T]he adjudicator generally should explain the weight given to opinions from 'other sources,' or otherwise ensure that the discussion of the evidence in

9

the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Acevedo,* 20 F. Supp. 3d at 389 (internal citations and quotations omitted).

Here, the ALJ did exactly what was required of her by the regulations. She acknowledged that Mr. Kulpit was not an acceptable medical source, and noted that despite that, his findings could be relevant to assess Plaintiff's RFC. Tr. 21. The ALJ then proceeded to review his findings, particularly those related to Plaintiff's ability to sit, stand, and walk, and considered them in relation to the rest of the record that documented Plaintiff's largely normal physical examinations. *Id*. As a result, the ALJ found that Mr. Kulpit's findings were not consistent with the record. *Id*. The Court does not find any reasons to disturb this finding. First, the ALJ properly discounted the opinion because it states that Plaintiff's physical limitations were not supposed to last more than 12 months. Tr. 892. Generally, to be found disabled, a claimant must show that her physical impairment was expected to last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905. Since the therapist noted that Plaintiff's sitting and standing limitations were not expected to last 12 months, the durational requirement cannot be satisfied because the statement about the projected length of Plaintiff's impairment suggests the improvement of her condition.

Additionally, the ALJ properly discounted Mr. Kulpit's opinion because the limitations he identified in Plaintiff's prolonged sitting, standing, or walking were inconsistent with the record. First, it should be noted that the therapist's length of treatment was limited to only three occasions when he saw Plaintiff in early 2018. Tr. 877-82. Additionally, the record is silent as to any complaints of back pain or other musculoskeletal issues that Plaintiff raised when seeing her treatment providers from before the date of the application until approximately January 2016, when she first complained of having right sided sharp pelvic pain. Tr. 475, 483, 485, 499, 517, 520-23, 533, 536, 540, 544, 548, 553, 558, 561. The review of the record reveals that Plaintiff's

10

pelvic pain was causes by an ovarian cyst that was resolved by her subsequent pregnancy. Plaintiff then complained of having back pain a year later in February and March 2017, however, such complaints were auxiliary to the main reason for Plaintiff's visits as she was primarily seen for her regular prenatal and postpartum checkups associated with her second pregnancy. Tr. 479, 489. Even then, the bulk of Plaintiff's treatment records demonstrated her otherwise non-remarkable physical examinations, with Plaintiff denying having any back pain or any other musculoskeletal problems.

In September 2017, Plaintiff complained about the return of her pelvic pain that had reoccurred after she delivered her second child, and of back pain, which was mainly caused by Plaintiff's bending forward. Tr. 440, 442, 776, 784-86, 795. Upon examination, Plaintiff had tenderness in her lumbar area, but also had a negative straight leg test, normal range of motion and strength, no tenderness of swelling in her extremities, and had otherwise unremarkable musculoskeletal examination. Tr. 785, 793, 796-97. Plaintiff was advised to stretch her back and referred to physical therapy. Tr. 798. She attended therapy in January 2018 with Mr. Kulpit, who noted Plaintiff having limited range of motion in her lumbar area, positive pelvic compression and Faber test, but also having full strength in hips and knees, as well as negative single leg raise tests. Tr. 878. Notably, Plaintiff's physical examinations by her other treatment providers during the same time period did not reveal any complaints of disabling back pain. Tr. 804. In fact, Plaintiff reported feeling well and denied having any back pain or other musculoskeletal problems. *Id*. It should also be noted that aside from undergoing physical therapy, the record does not contain any evidence of Plaintiff being prescribed more invasive treatment options to relieve her back pain. *See Salvaggio v. Apfel*, 23 F. App'x 49, 51 (2d Cir. 2001) (finding that that "the plaintiff's choice to seek only minimal medical attention of her symptoms . . . supports the finding that the plaintiff

was not under a disability"). None of her treatment providers suggested that Plaintiff undergo surgery, injections, or any other more invasive type of treatment for back pain. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (the ALJ "is entitled to rely not only on what the record says, but also on what it does not say").

Even though the record contained very little evidence documenting Plaintiff's complaints of back pain, the ALJ, nonetheless, properly considered it in conjunction with Plaintiff's ability to function when she formulated Plaintiff's RFC and limited her to medium work with hourly position changes for one to two minutes, and precluded Plaintiff from climbing all ladders, ropes, or scaffolds, and being exposed to unprotected heights and moving machinery. Tr. 17. The record contains sufficient evidence to demonstrate that Plaintiff was able to undependably dress, bathe, and groom herself, cook, do general cleaning, and care for her two children without having any impact of these activities in her back condition. Tr. 38-42, 44-45, 429. Therefore, the ALJ's restriction of Plaintiff to medium work is consistent with evidence of her unremarkable physical examinations demonstrating normal gait and full strength in her extremities, and Plaintiff's hearing testimony that she could lift her child weighing twenty-pounds without having any pain in her back. *See Trepanier*, 752 F. App'x at 78 (plaintiff's statement that he could frequently lift and carry 30 pounds "fully comports with the frequent lifting and carrying requirement of medium work because [b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time for medium work) (internal citations and quotations omitted).

In sum, because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet her burden to demonstrate that she had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726

(2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC).  While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).  Here, the ALJ discussed the medical opinion evidence of the record, set forth her reasoning for the weight assigned to each opinion, and discussed specific evidence in the record which supported her RFC determination.  As such, the Court finds that the RFC determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is GRANTED. The Commissioner's decision is hereby AFFIRMED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: February 26, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court